1
Brandt L. Wolkin, Esq. SBN 112220
2
David F. Myers, Esq. SBN 185102
Catharine M. Tolson, Esq. SBN 271223
3
WOLKIN · CURRAN, LLP
111 Maiden Lane, Sixth Floor
4
San Francisco, California 94108
Telephone:  (415) 982-9390
5
Facsimile:  (415) 982-4328
bwolkin@wolkincurran.com
6
dmyers@wolkincurran.com
ctolson@wolkincurran.com
7
Attorneys for plaintiff
GRANGE INSURANCE ASSOCIATION
8

9

10
UNITED STATES DISTRICT COURT
11
FOR THE CENTRAL DISTRICT OF CALIFORNIA
12
GRANGE INSURANCE
ASSOCIATION, a Washington
13
corporation,

|  |  |
|---|---|
| GRANGE INSURANCE ASSOCIATION, a Washington corporation, <br><br> Plaintiff, <br><br> v. <br><br> HYUNDAI MOTOR AMERICA, HYUNDAI MOTOR COMPANY, KIA AMERICA, INC., KIA CORPORATION, and DOES 1 through 100, inclusive, <br><br> Defendants. | Case No.  8:23-CV-1354 <br><br> **COMPLAINT IN SUBROGATION FOR:** <br><br> 1. **BREACH OF WARRANTY;** <br> 2. **NEGLIGENCE; AND** <br> 3. **NEGLIGENT FAILURE TO WARN;** <br> 4. **UNJUST ENRICHMENT** <br> 5. **VIOLATION OF CALIFORNIA SONG-BEVERLY ACT** <br><br> **DEMAND FOR JURY TRIAL** |

COMES NOW, GRANGE INSURANCE ASSOCIATION ("Grange" and/or "Subrogation Plaintiff"), by and through its counsel, and for their Complaint against all named Defendants, alleges as follows:

## INTRODUCTION

1.    Subrogation Plaintiff brings this action for damages against Defendants HYUNDAI MOTOR AMERICA, HYUNDAI MOTOR COMPANY, KIA AMERICA, INC., KIA CORPORATION, and DOES 1

1

COMPLAINT                                      CASE NO. 8:23-CV-1354

1  through 100, inclusive, for damages it suffered arising out of Defendants'

2  violation of their duties under applicable law including their negligent

3  misrepresentations, and failure to comply with federal regulatory requirements

4  to equip their vehicles with mandatory anti-theft protection that complies with

5  the requirements of FMVSS 114.

## JURISDICTION AND VENUE

7       2.     The Court has general personal jurisdiction over Defendants

8  because they conduct substantial business in this judicial district, and they

9  intentionally and purposefully placed vehicles that are the subject of this action

10  into the stream of commerce within this judicial district and elsewhere in the

11  United States. Hyundai Motor America and Kia America, Inc. maintain their

12  principal business offices in Orange County.

13       3.     This Court has subject matter jurisdiction pursuant to 28 U.S.C.

14  1332 (a)(1), as the amount in controversy exceeds this Court's jurisdiction,

15  exclusive of interest and costs, and the Plaintiff is an entity of a state different

16  from each of the named defendants.

17       4.     This Court also has subject matter jurisdiction pursuant to 28

18  U.S.C. 1332(a), as the Plaintiff is domiciled in a different states than all the

19  Defendants, and the amount in controversy is in excess of $75,000, exclusive

20  of interest and costs.

21       5.     Venue is proper in this judicial district pursuant to 28 U.S.C.

22  1391(b), as all Defendants do substantial business in this judicial district,

23  including the selling of the vehicles at issue.

## PARTIES

25       6.     Subrogation Plaintiff Grange is now, and at all times mentioned in

26  the Complaint was, an insurance company organized and existing under the

27  laws of the State of Washington with its principal place of business located at

28  200 Cedar Street, Seattle, Washington.  Grange is licensed to do business in the

2

COMPLAINT                                        CASE NO. 8:23-CV-1354

State of California by the California Secretary of State and Department of Insurance.  Subrogation Plaintiff provided insurance coverage to automobile owners for losses due to various causes, including theft and damage arising therefrom. Subrogation Plaintiff investigated and adjusted and paid or will pay money to its insureds under the terms of those policies and the law for damage caused by the Defendants' conduct, as alleged herein.  These payments were not voluntary.  Subrogation Plaintiff is obligated to make payment or has made payments to its insureds and is therefore equitably subrogated to the rights of its insureds and "stands in the shoes" of its insureds.  Subrogation Plaintiff's damages are the amounts paid to its insureds and are therefore in a liquidated sum. Subrogation Plaintiff's insureds have an existing, assignable cause of action against Defendants, which insureds could have asserted for their own benefit had they not been compensated by Subrogation Plaintiff for their losses. Accordingly, Subrogation Plaintiff has suffered damages caused by Defendants acts or omissions, and Subrogation Plaintiff has a present equitable and/or legal right against Defendants to the extent of payments made or to be made to its insureds.

7.    Defendant Hyundai Motor America ("HMA") is a California corporation with its principal place of business located at 10550 Talbert Avenue, Fountain Valley, CA 92708.  HMA engaged in business throughout the United States, including in this judicial district.

8.    Defendant Hyundai Motor Company ("HMC") is a South Korean corporation.  HMC is the parent corporation of HMA.

9.    Defendant HMA is HMC's U.S. sales and marketing division, which manages and oversees the sales and other operations of HMC across the United States. HMA distributes and sells these vehicles through its dealership network. Money received from the purchase or lease of a Hyundai vehicle from a dealership flows from the dealer to HMC and HMA.

COMPLAINT                                                    CASE NO. 8:23-CV-1354

13.    Plaintiff is informed and believes and based thereon alleges that Defendant HMC and Defendant HMA work cooperatively and communicate with each other on all aspects of the Hyundai products which HMC and HMA distribute and sell within the United States, including jointly making all decisions regarding the distribution, service, repair, installation, and incorporation of anti-theft and other safety devices and designed components, including any decisions relating to the failure to provide such protections and anti-theft devices in Hyundai vehicles, as they relate to the defect in the Hyundai vehicles addressed in this action.

14.    Plaintiff is informed and believes and based thereon alleges that Defendants HMA and HMC cooperated and jointly developed all pertinent marketing materials  regarding the differences between trim packages and warranty booklets sold and distributed with the Hyundai vehicles that are the subject of this action.

15.    Upon information and belief, Hyundai dealers sold certain 2011-2022 Hyundai vehicles equipped with traditional 'insert-and-turn' steel key ignition systems (hereinafter the "Subject Vehicles").

17.    Upon information and belief, the Hyundai dealers that sold the Subject Vehicles to Plaintiff's insureds are expressly authorized by HMA and HMC to offer express warranties to purchasers of Hyundai vehicles, directly from HMA and HMC.

18.    The Hyundai dealers that sold Subject Vehicles to Plaintiff's insureds were acting as HMA and HMC's agents with actual and apparent authority in selling the Subject Vehicles to Plaintiff's insureds.

19.    Defendant Kia America, Inc. ("KA") (formerly Kia Motors America, Inc.) is a California corporation with its principal place of business at 111 Peter Canyon Rd., Irvine, CA 92606. KA engages in continuous and

///

COMPLAINT                                                    CASE NO. 8:23-CV-1354

1    substantial business throughout the United States, including in this judicial

2    district.

3         20.    Defendant Kia Corporation ("KC") is a South Korean corporation.

4    KC is the parent corporation of KA.

5         21.    Defendant KA is an automobile design, manufacturing,

6    distribution, and service corporation doing business within the United States.

7    Furthermore, Defendant KA designs, develops, manufactures, distributes,

8    markets, sells, leases, warrants, services, and repairs passenger vehicles,

9    including certain 2011-2022 Kia vehicles (hereinafter included in the term

10   "Subject Vehicles") equipped with traditional 'insert-and-turn' steel key

11   ignition systems."

12        22.    Defendant KA is KC's U.S. sales and marketing division, and it

13   manages and oversees sales and other operations of KC across the United

14   States. KA distributes Kia vehicles and sells these vehicles through its network

15   of dealerships. Money received from the purchase or lease of a Kia vehicle

16   from a dealership flows from the dealer to KC and KA.

17        23.    Upon information and belief, Defendant KC and Defendant KA

18   cooperate and jointly make all decisions regarding the distribution, service,

19   repair, installation, and incorporation of anti-theft and other safety devises and

20   designed components, including any decisions relating to the failure to provide

21   such protections and anti-theft devices in Kia vehicles, as they relate to the

22   defect in the  Kia vehicles at issue in this action.

23        24.    Upon information and belief, Defendants KA and KC cooperated

24   and jointly developed all pertinent marketing materials regarding the

25   differences between trim packages and warranty booklets for the Kia vehicles

26   that are the subject of this action.

27   ///

28   ///

COMPLAINT                                    CASE NO. 8:23-CV-1354

25.    Upon information and belief, Defendant KC and Defendant KA work cooperatively and communicate with each other on all aspects of the Kia products, which KC and KA distribute and sell within the United States.

26.    Upon information and belief, the Kia dealers that sold Subject Vehicles to Plaintiff's insureds hold themselves out, with KA and KC's express and implied permission, as associated with KA and KC to sell KA and KC's vehicles on KA and KC's behalf.

27.    For instance, the Kia dealers that sold the Subject Vehicles to Plaintiff's insureds are expressly authorized by KA and KC to offer express warranties to purchasers of Kia vehicles, directly from KA and KC.

28.    The Kia dealers that sold Subject Vehicles to Plaintiff's insureds were acting as KA and KC's agents with actual and apparent authority in selling the Subject Vehicles to Plaintiff's insureds.

29.    As of the end of 2021, KC's largest shareholder is HMC, which holds 33.88 percent of KC's stock. HMA and HMC are collectively referred to in this complaint as "Hyundai" unless identified separately.

31.    KA and KC are collectively referred to in this complaint as "Kia" unless identified separately.

32.    HMA, HMC, KA, and KC are collectively referred to in this complaint as "Defendants" unless identified separately.

## FACTUAL ALLEGATIONS

33.    Between 2011 and 2022, Defendants sold vehicles equipped with traditional 'insert-and-turn' steel key ignition systems, and without immobilizers that, when properly designed and installed, have been proven to deter auto theft. Unlike other manufacturers, the Subject Vehicles manufactured by the Defendants are not equipped with an "immobilizer," or any other comparable anti-theft feature or design element that will prevent the
///

6

COMPLAINT                                          CASE NO. 8:23-CV-1354

1   car from being started, driven forward, and steered. This security vulnerability

2   makes the Defendants' vehicles dangerously easy to steal.

3          34.     Effective July 28, 2010, the U.S. Department of Transportation,

4   National Highway Traffic Safety Administration, adopted and enacted Federal

5   Motor Vehicle Safety Standard ("FMVSS") 114, which states: "The purpose of

6   this standard is to decrease the likelihood that a vehicle is stolen … This

7   standard applies to passenger cars …," which required vehicle manufactures to

8   incorporate anti-theft security features within vehicles distributed and sold in

9   the U.S.

10         35.     Electronic transmitters and receivers called "immobilizers" are

11  utilized to comply with the United States' regulatory requirements to prevent

12  the theft of vehicles by nearly all vehicle manufacturers within the U.S. and

13  worldwide, as a standard within the industry. Immobilizers, as incorporated

14  and designed by other vehicle manufactures, have been proven to deter auto

15  theft.

16         36.     Immobilizers are security, and specifically anti-theft, devices

17  installed within vehicles and in relation to the engine that contain a receiver.

18  Immobilizers prevent activation and forward self-mobility of vehicles if the

19  receiver does not detect a corresponding, paired transponder, which is located

20  in the vehicle's key. If the receiver within the immobilizer does not detect the

21  transponder within the vehicle's key nearby, the engine will not start, and the

22  vehicle will not achieve forward self-mobility, even if the ignition is turned.

23         37.     The United States does not specifically require the use of

24  immobilizers. Rather, immobilizers are one method, as adopted by many

25  manufacturers as an industry standard, to comply with the requirements of

26  FMVSS The National Highway Traffic Safety Administration (NHTSA) has

27  issued an opinion letter confirming that vehicles with immobilizers satisfy

28  FMVSS 114 because the immobilizer prevents the normal activation of the

7

COMPLAINT                                              CASE NO. 8:23-CV-1354

1  vehicle's engine and forward self-mobility of the vehicle when the vehicle's

2  key is removed.

3    38.    Even if a vehicle does not contain an immobilizer, it must still

4  comply with the requirements of Federal Motor Vehicle Safety Standard 114.

5  Although a lack of an immobilizer alone does not violate FMVSS 114, vehicles

6  must incorporate sufficient anti-theft features or design elements that meet the

7  minimum standards defined by FMVSS 114.

8    39.    In the United States, immobilizers have become an industry

9  standard anti-theft protection device, and nearly all of Defendants' major

10  competitors include immobilizers as standard anti-theft technology in their

11  vehicles to comply with FMVSS 114.

12    40.    Kia and Hyundai have refused to include immobilizers as a

13  standard anti-theft technology across their entire line of vehicles. Although Kia

14  and Hyundai included immobilizers as anti-theft protection in certain of their

15  vehicles, they did not provide purchasers of other vehicles, including the

16  Subject Vehicles, with either the anti-theft protection provided by

17  immobilizers, or with other FMVSS 114-compliant anti-theft features or design

18  elements, unless the consumers also purchased expensive trim packages which

19  included luxury features having nothing to do with vehicle safety requirements;

20  or, if anti-theft features or design elements were provided, they failed to fulfill

21  the functions or achieve the results required by FMVSS 114.

22    41.    Further, Kia and Hyundai did not include any other features or

23  design elements on the Subject Vehicles that would prevent those vehicles

24  from being easily stolen or otherwise bringing those vehicles into compliance

25  with FMVSS 114.

26    42.    In short, Kia and Hyundai have violated federal law by continually

27  selling certain vehicles without anti-theft protection sufficient to satisfy federal

28  regulations intended to protect life and property. In order for consumers to

8

COMPLAINT                                    CASE NO. 8:23-CV-1354

obtain these protections in certain Kia and Hyundai vehicles, Kia and Hyundai forced the consumer to pay thousands of dollars extra for trim packages which include antitheft protection. In so doing, Kia and Hyundai improperly made the inclusion of anti-theft protection dependent upon the purchaser's ability to pay for luxurious trim package features.

43.    On information and belief, Defendants have long been aware of the anti-theft benefits attendant to making immobilizers a standard feature on their vehicles based on the immobilizer mandates of other countries in which Kia and Hyundai sell their vehicles. In fact, Kia and Hyundai sell virtually identical vehicles as the Subject Vehicles—except equipped with immobilizers—in other countries with immobilizer requirements. Nevertheless, Kia and Hyundai have failed to include as "standard" the same immobilizer technology for all vehicles sold within the U.S. Nor have Kia and Hyundai equipped the Subject Vehicles with any alternative anti-theft feature or design element that would comply with FMVSS 114.

44.    Given the ease with which the Subject Vehicles can be stolen, the United States has experienced a marked increase in reported car thefts of the Subject Vehicles.

49.    In recent years, this trend has been accelerated by viral TikTok videos and videos on other popular social media platforms revealing the lack of an immobilizer in the Subject Vehicles, and further showing how to steal a Subject Vehicle by doing nothing more than bypassing the key slot and turning the ignition with a common USB cable (or any similarly shaped metal object) to start the engine.

45.    The viral videos offer step-by-step instructions on how to steal Subject Vehicles and encourage viewers to steal Subject Vehicles as part of the "Kia Challenge." Videos created in response to the Kia Challenge show persons stealing the Subject Vehicles and causing damage thereto. These

9

incidents have resulted in personal injuries, deaths and significant property damages related to the thefts.

46.    Additionally, when the Subject Vehicles are stolen due to the lack of any anti-theft features or design elements sufficient to comply with FMVSS 114, other property is often stolen and damaged in the process, such as any personal property that may have been within the vehicles at the time of the theft.

47.    By failing to equip the Subject Vehicles with sufficient anti-theft features or design elements to prevent the theft of Subject Vehicles in the manner described herein this pleading, the Defendants have violated federal law as the Subject Vehicles fail to comply with Federal Motor Vehicle Safety Standard ("FMVSS") 114, which requires: "Each vehicle must have a starting system which, whenever the key is removed from the starting system prevents: (a) The normal activation of the vehicle's engine or motor; and (b) Either steering, or forward self-mobility, of the vehicle, or both." 49 CFR § 16 571.114.

48.    The Subject Vehicles do not comply with FMVSS 114, because the Subject Vehicles can be started by simply bypassing the key slot/starting system and using a common USB cable (or any other similarly shaped object) to activate the engine and achieve both forward self-mobility and steering. Upon information and belief, at this point, the USB cable can be removed without deactivating the engine.

49.    The Subject Vehicles do not contain starting systems with anti-theft features or design elements that would prevent forward self-mobility and steering when the key is removed from the starting system, as required by FMVSS 114.

50.    Upon information and belief, the Defendants also made representations on their vehicles and/or in product literature related to the

COMPLAINT                                          CASE NO. 8:23-CV-1354

1    vehicles affirmatively representing that the vehicles conformed to all
2    applicable USA federal motor vehicle theft prevention standards in effect on
3    the date of manufacture, though this was not true.

4        51.    If the Subject Vehicles had been manufactured in compliance with
5    FMVSS 114, as required under federal law, they would not have been stolen
6    with such frequency because, without a key, the engine would not start nor
7    would forward self-mobility or steering be achieved.

8        52.    In marketing materials, Defendants often advertised that higher-
9    end trim packages came with a "push button start" feature rather than a
10    traditional turnkey ignition. However, Defendants did not inform consumers
11    that the Subject Vehicles were being sold without mandatory anti-theft
12    protection required by the federal government to safeguard life and property,
13    whether in the form of an immobilizer or otherwise.

14        53.    When Defendants did disclose the lack of an immobilizer in lower
15    end trim packages, the disclosure was often made in a detailed trim packages
16    comparison chart that consumers generally do not receive, read and/or
17    understand. Such disclosures merely listed "immobilizer" without explaining
18    what it does, that it is an anti-theft device intended to satisfy federal safety
19    regulations, or that the lack of an immobilizer greatly increased the risk of
20    vehicle thefts.

21        54.    Defendants long have known the anti-theft and security benefits
22    offered by immobilizers, as is evidenced by the fact that Defendants have
23    incorporated immobilizers as standard technology in select higher-end models
24    and as a feature in higher-end trim packages on other models. Defendants have
25    simply refused to meet the standard of care established by their competitors,
26    which installed immobilizers as standard technology on all their vehicles.

27        55.    Kia's knowledge of the efficacy of immobilizers in preventing
28    vehicle theft is further evidenced by the fact that, as early as 2007, Kia sought

11

COMPLAINT                                    CASE NO. 8:23-CV-1354

1   to add an immobilizer to its Amanti model. In petitioning the federal

2   government for an exemption to certain parts-making requirements of the Theft

3   Prevention Standard (49 C.F.R. part 51), Kia represented that immobilizers had

4   reduced the rates of vehicle thefts on other vehicle models by between 58 and

5   80 percent.

6        56.    Hyundai's knowledge of the efficacy of immobilizers in

7   preventing vehicle theft is also evidenced by the fact that, as early as 2007,

8   Hyundai sought to add an immobilizer to its Azera model. In petitioning the

9   federal government for an exemption to certain parts-making requirements of

10  the Theft Prevention Standard (49 C.F.R. part 51), Hyundai represented that

11  immobilizers had reduced the rates of vehicle thefts on other vehicle models by

12  between 58 and 80 percent.

13       57.    Upon information and belief, Defendants have also known of the

14  unusually high rate of thefts experienced by Subject Vehicles for many years,

15  through scores of customer complaints relayed directly, through their dealers,

16  and/or through relevant government agencies. Yet, Defendants continued to

17  sell dangerous and defective Vehicles that lack an immobilizer or other anti-

18  theft feature or design element sufficient to satisfy FMVSS 114. Defendants

19  failed to warn consumers of the severe risk of theft that resulted from the lack

20  of compliance with FMVSS 114.

21       58.    Only when the problem became too large to ignore did Defendants

22  decide to introduce immobilizers as a standard feature in all new vehicles going

23  forward and announced efforts toward a future software patch that supposedly

24  may help reduce the rate of vehicle thefts in at least some Subject Vehicles.

25  But the Plaintiff remains on the hook for all damages and expenses resulting

26  from Defendants' wrongful actions.

27       59.    Plaintiff issues and underwrites policies of automobile and

28  property insurance.

COMPLAINT                                          CASE NO. 8:23-CV-1354

60.    The Subject Vehicles' noncompliance with FMVSS 114 caused Plaintiff's insureds to suffer property damage, including the loss of use thereof and other related damages. As a result, Plaintiff's insureds made claims under policies of insurance held with the Plaintiff, which claims were investigated and paid by Plaintiff to its insureds per the applicable policy terms.

61.    By virtue of its claim payments for amounts in excess of this Court's jurisdiction, Plaintiff is now legally, equitably, and contractually subrogated to the rights, interests and claims of its insureds against all responsible third parties, including the Defendants herein, and have also incurred, and will continue to incur, damages in its own right.

## FIRST CAUSE OF ACTION

### *BREACH OF WARRANTY*

62.    Plaintiff incorporates by reference each preceding and succeeding as though fully set forth at length herein.

63.    Plaintiff is informed and believes and thereupon alleges that at the time of its insureds' purchases of the Subject Vehicles from the Defendants and each of them, said Defendants expressly and impliedly warranted that the Subject Vehicles would be free of defects; would be safe for their intended use and would be manufactured, designed, assembled and offered to the Insureds as merchantable and fit for the ordinary purposes for which they were sold. However, the Subject Vehicles were not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because, inter alia, the defective Subject Vehicles lacked any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a severe and highly dangerous risk of vehicle theft. Therefore, the Subject Vehicles were not fit for their particular purpose of providing safe and reliable transportation.

///

COMPLAINT                                              CASE NO. 8:23-CV-1354

64.    Defendants' warranties were designed and intended for the benefit of Plaintiff's insureds as ultimate consumers of the Subject Vehicles.

65.    Plaintiff's insureds relied on the existence and length of the implied warranties in deciding whether to purchase or lease the Subject Vehicles.

66.    Contrary to the applicable express and implied warranties, the Subject Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff's insureds with reliable, durable, and safe transportation. Instead, the Subject Vehicles suffer from a defective design(s) and/or manufacturing defect(s) that render them vulnerable to an abnormally high risk of theft.

67.    Defendants' actions, as complained of herein, breached the implied and/or express warranties that the Subject Vehicles were of merchantable quality and fit for such use.

## SECOND CAUSE OF ACTION

### *NEGLIGENCE*

68.    Plaintiff incorporates by reference each preceding and succeeding paragraph as if fully set forth at length herein.

69.    Defendants manufactured, distributed and sold the Subject Vehicles.

70.    Defendants violated applicable industry standards and otherwise failed to exercise reasonable care in connection with their manufacture, distribution and sale of the Subject Vehicles.

71.    Further, Defendants made negligent misrepresentations to Plaintiff's insureds concerning the safety, quality, and legal compliance of the Subject Vehicles that were not true or reasonable to believe and which they intended Plaintiff's insureds to rely upon, and Plaintiff's insureds did reasonably rely upon these misrepresentations.

14

COMPLAINT                                    CASE NO. 8:23-CV-1354

72.    The Defendants' violation of their duties under applicable law included their negligent misrepresentations, and failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS 114, as a result whereof Plaintiff's insureds suffered property damage, including the loss of use thereof, together with other damages for which the Defendants are liable.

## THIRD CAUSE OF ACTION

### *NEGLIGENT FAILURE TO WARN*

73.    Plaintiff incorporates by reference each preceding and succeeding paragraph as if fully set forth at length herein. Defendants manufactured, distributed, and sold the Subject Vehicles.

74.    The Subject Vehicles sold to Plaintiff's insureds:

i.    were not merchantable;

ii.    were not reasonably suited for the intended use for which they were sold; and

iii.    were in a defective and unreasonably dangerous condition at the time of sale, by reason of the design of the Subject Vehicles.

75.    Defendants owed the Plaintiff's insureds a duty to warn with respect to dangers and risks associated with the ordinary and foreseeable use of the Subject Vehicles, particularly when such risks arose from latent and hidden defects of design that could not be detected by the Plaintiff's insureds in the exercise of any reasonable care.

76.    At all relevant times, including at the time of sale, Defendants knew that the Subject Vehicles were defective, because the lack of an immobilizer or other anti-theft features or design elements sufficient to comply with FMVSS 114 would create a dangerous risk of vehicle theft, a risk to the safety of consumers and the public, and a risk of property damage and loss.

///

15

77.     Defendants breached their duty owed to the Plaintiff's insureds by completely failing to provide them with any warnings with respect to the dangers and risks of vehicle thefts and harm to consumers, the public, and property directly resulting from the design of the Subject Vehicles, including the lack of anti-theft features and/or design elements that complied with FMVSS 114.

79.     The failure to warn Plaintiff's insureds of the dangers and risks caused by noncompliance with FMVSS 114 was unreasonable, and Defendants' failure to warn was the result of a lack of due care and ordinary diligence.

80.     Defendants' failure to warn Plaintiff's insureds regarding the defective and unreasonably dangerous condition of the Subject Vehicles proximately caused damage to Plaintiff's insureds resulting from vehicle thefts.

81.     Defendants are liable for negligent failure to warn in tort for the damages caused by the Subject Vehicles.

82.     Defendants owe a duty to consumers not to sell dangerous products that create severe risks of vehicle theft, property damage, and harm to the safety of consumers and the public, and to warn consumers of such risks. This duty arises under applicable law and is independent of any contractual obligation.

83.     As a direct and proximate result of Defendants' negligent failure to warn, Plaintiff's insureds suffered property damage, including the loss of use thereof, and other damages for which Defendants, and each of them, are liable.

## FOURTH CAUSE OF ACTION

### *UNJUST ENRICHMENT*

84.     Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

///

16

COMPLAINT                                             CASE NO. 8:23-CV-1354

85.    Plaintiff's insureds conferred monetary benefits upon the Defendants when the purchased or leased the Subject Vehicles.

86.    The Defendants were aware of and possessed knowledge of said monetary benefits.

87.    The Defendants charged and received from Plaintiff's insureds the benefit of a higher price for the Subject Vehicles, in light of the failure of the Subject Vehicles to comply with FMVSS 114, the increased risk of vehicle theft, and any of the Defendants' wrongful acts or omissions to act.

88.    The Defendants have continued to be unjustly enriched at the expense of Plaintiff's insureds, and their retention of this benefit is inequitable.

89.    Plaintiff seeks all available equitable relief, including but not limited to restitution in the amount of the benefit conferred on the Defendants as a result of their wrongful acts or omissions to act.

## FIFTH CAUSE OF ACTION

### *VIOLATIONS OF THE CALIFORNIA SONG-BEVERLY ACT;*

### *CAL. CIV. CODE §§ 1791, ET SEQ.*

90.    Plaintiff incorporates by reference each preceding and succeeding paragraph as though fully set forth at length herein.

91.    For the purposes of this Count V only, the definition of "Subject Vehicles" is restricted to those vehicles which were sold to Plaintiff's insureds within the State of California.

92.    At all relevant times, the Defendants were manufactures, distributors, warrantors, and sellers of the Subject Vehicles, and they knew or should have known of the specific use for which the Subject Vehicles were purchased.

93.    Defendants provided Plaintiff's insureds with the implied warranties that the vehicles were merchantable and fit for the ordinary purposes for which the vehicles were sold.

COMPLAINT                                              CASE NO. 8:23-CV-1354

94.     The Subject Vehicles were not merchantable or fit for their ordinary purpose, because they contained an inherent defective condition at the time of sale as a result of their failure to contain sufficient or adequate anti-theft or safety devices.

95.     The Defendants' actions or omissions to act, as complained-of herein, breached the implied warranties that the vehicles were merchantable and fit for their ordinary purpose in violation of California Civil Code §§ 1792 and 179.1.

96.     As a direct and proximate result of the Defendants' breach of their implied warranties, Plaintiff's insureds suffered property damage, including the loss of use thereof and causing other related damages.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all claims for which a jury trial is authorized.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against all Defendants and each of them as set forth below:

a.     For payment to Plaintiff for reimbursement for all damages resulting from the replacement or repair of the defective products, in an amount to be proven at trial;

b.     For payment to Plaintiff of all damages resulting from property damage caused by the Defendants' defective products, in an amount to be proven at trial;

c.     For interest as provided by law, including but not limited to prejudgment and post-judgment interest as provided by rule or statute;

d.     For restitution and award of reasonable attorneys' fees and costs, as authorized by law, and

COMPLAINT                                           CASE NO. 8:23-CV-1354

1       e.    For such other and further relief as this Court may deem just,

2            equitable, or proper.

3       Respectfully submitted,

4  Dated:   July 27, 2023             WOLKIN CURRAN, LLP

5

6                           */s/ Catharine M. Tolson*

7                 By: _____

8                       Brandt L. Wolkin, Esq.
                         David F. Myers, Esq.

9                       Catharine M. Tolson, Esq.

10                       Counsel for plaintiff
                     GRANGE INSURANCE
                       ASSOCIATION

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT                                    CASE NO. 8:23-CV-1354